CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 21 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTHONY FERGUSON, | ) |
| Plaintiff, | ) Civil Action No. 7:18CV00454 |
| v. | ) **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) By: Hon. Glen E. Conrad<br>) Senior United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Anthony Ferguson, was born on August 23, 1983. He graduated from high school and eventually earned a degree from the University of Phoenix. (Tr. 33). Mr. Ferguson has previously worked as military infantry leader, human resource assistant, cashier, general laborer, and security guard. (Tr. 23). He last worked on a regular and sustained basis in 2013. (Tr. 38, 308). On November 7, 2013, Mr. Ferguson filed an application for a period of disability and disability benefits. In filing his current claim, plaintiff alleged that he became disabled for all forms of substantial gainful employment on July 1, 2013, due to post-traumatic stress disorder (PTSD), right shoulder pain, lower back pain, knee pain, depression, and anxiety. (Tr. 285, 301).

Mr. Ferguson now maintains that he has remained disabled to the present time. The record reveals that plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally 42 U.S.C. §§ 416(i) and 423(a).

Mr. Ferguson's application was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated August 2, 2017, the Law Judge also determined, after applying the five-step sequential evaluation process, that Mr. Ferguson is not disabled. See 20 C.F.R. § 404.1520.[1] The Law Judge found that plaintiff suffers from several severe impairments, including PTSD, generalized anxiety disorder, right shoulder impingement syndrome, and carpal tunnel syndrome, but that these impairments do not, either individually or in combination, meet or medically equal the requirements of a listed impairment. (Tr. 15–16). The Law Judge then assessed Mr. Ferguson's residual functional capacity (RFC) as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. [§] 404.1567(b) except he can only frequently balance, stoop, crouch, kneel, or climb, occasionally crawl, and never climb on ladders, ropes, or scaffolds. He can occasionally reach overhead with his right upper extremity, occasionally push or pull with his bilateral upper extremities, frequently finger and feel for fine manipulation bilaterally, and frequently handle and grasp for gross manipulation bilaterally. Additionally, the claimant must avoid concentration [sic] exposure to temperature extremes of cold and heat, wetness, humidity, vibrations, excessive loud noise such as jackhammer noise, and hazards including moving machinery and unprotected heights. He can perform simple routine tasks, but no complex tasks, in a low stress work environment defined as occasional decision-making and occasional changes in the work setting. Furthermore, the claimant

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 404.1520. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

> can have occasional interaction with supervisors and coworkers, but not in team type setting work, and no interaction with the public.

(Tr. 18). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Mr. Ferguson is unable to perform any of his past relevant work. (Tr. 23). However, the Law Judge found that plaintiff retains the capacity to perform other work roles existing in significant number in the national economy. In particular, the Law Judge accepted the vocational expert's testimony that an individual with the same limitations as Mr. Ferguson can work as a "Bakery worker on a conveyor line, DOT code 524.687-022," or as a "Surveillance system monitor, DOT code 379.367-010."[2] (Tr. 24). Accordingly, the Law Judge concluded that Mr. Ferguson is not disabled, and that he is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Ferguson has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4)

---

[2] The DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 1991) ("DOT") is a "Social Security Administration resource[] that list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations." Pearson v. Colvin, 810 F.3d 204, 205 n.1 (4th Cir. 2015). "The Social Security Administration also uses a companion resource to the DOT, entitled SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES (1993) [("SCO")], that explains additional physical and environmental demands of the occupations listed in the DOT." Thomas v. Berryhill, 916 F.3d 307, 310 n.1 (4th Cir. 2019).

3

the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

On appeal, Mr. Ferguson raises several arguments, including that the Law Judge erred in failing to identify or resolve apparent conflicts between the DOT and the testimony of the vocational expert. After reviewing the record and considering the parties' arguments, the court finds "good cause" to remand the case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g).

When, as in this case, the Law Judge determines that a claimant's RFC prevents the claimant from performing his past relevant work, the Law Judge reaches step five of the sequential evaluation process. Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019). At this step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant is capable of doing other work that exists in significant supply in the national economy." Id. The Commissioner typically seeks to meet this burden through the testimony of a vocational expert. Id. Specifically, as in this case, the Law Judge asks a vocational expert to testify as to whether a hypothetical person with the same limitations as the claimant would be able to perform any of the jobs listed in the DOT. Id.

The Law Judge "cannot rely unquestioningly" on a vocational expert's testimony. Id. Instead, the Law Judge must ensure that any "apparent conflicts" between the DOT and the vocational expert's testimony are reasonably resolved. Id. (internal quotation marks omitted) (citing SSR 00-4p, 2000 WL 1898794 at *2 (Dec. 4, 2000)). To that end, the Law Judge must ask the vocational expert whether his testimony conflicts with the DOT. Id. "If the answer is 'yes,' the ALJ 'must elicit a reasonable explanation for the conflict before relying on' the testimony." Id. (quoting SSR-04p, supra). "But even if the [vocational expert] answers 'no,' the ALJ has an

affirmative 'duty to make an independent identification of apparent conflicts.'" Id. (quoting Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015)). "This means that the ALJ must recognize and resolve ways in which a VE's testimony 'seems to, but does not necessarily,' conflict with the 'express language' of the DOT—even if the conflict is not 'obvious.'" Id. (quoting Pearson, 810 F.3d at 209).

The United States Court of Appeals for the Fourth Circuit's decisions in Pearson and Thomas provide helpful examples of what makes a conflict "apparent." In Pearson, a Law Judge's assessment of the claimant's RFC included a finding that the claimant "could only occasionally reach upward" with his "nondominant arm." Pearson, 810 F.3d at 210. After being informed of the claimant's RFC, a vocational expert testified that an individual with such limitations could perform several jobs that existed in significant number in the national economy. Id. However, according to the DOT, all of the jobs identified by the vocational expert required "frequent reaching." Id. at 210–11 (emphasis in original). The Fourth Circuit held that there was an apparent conflict between the DOT and the vocational expert's testimony, even though it was unclear whether the jobs identified by the vocational expert would require the claimant to reach upward with his nondominant arm. Because the Law judge failed to identify or resolve the conflict, the Fourth Circuit remanded the case for further consideration. Id. at 211.

In Thomas, the Fourth Circuit found that the vocational expert's testimony contained a comparable conflict with the DOT. 916 F.3d at 314. In assessing the claimant's RFC, the Law Judge limited the claimant to "jobs that involve only 'short, simple instructions.'" Id. at 310. After being advised of the claimant's RFC, a vocational expert testified that an individual with such limitations could work as a marker, final inspector, or order caller. Id. at 311. Yet, according to the DOT, all three of the jobs identified by the vocational expert "require employees

5

to carry out detailed but uninvolved written or oral instructions." Id. (internal quotation marks and citations omitted). The Fourth Circuit concluded that the conflict between the claimant's limitation to short, simple instructions and the vocational expert's testimony that the claimant could perform jobs that include detailed but involved instructions was "as apparent as the conflict ... identified in Pearson." Id. Accordingly, the Court remanded the case for further proceedings so that the Law Judge could "resolve the conflict in accordance with the Administration's regulations." Id.

In the instant case, after being informed of Mr. Ferguson's RFC limitations, the vocational expert testified that an individual with such limitations could work as a bakery worker on a conveyor line or as a surveillance system monitor. (Tr. 55, 60). Plaintiff argues that the vocational expert's testimony as to both positions conflicts with the DOT and that the Law Judge erred in failing to resolve the apparent conflicts. For the following reasons, the court agrees.

Turning first to the job of bakery worker on a conveyor line, the DOT states that an individual in such position "[i]nspects cakes moving along conveyor to detect defects," "removes defective cakes from conveyor to reject bins," "[p]ositions cakes on conveyor for application of filling or icing by machine," and "[o]bserves cakes moving under automatic topping shaker and cake cutting machine to ensure uniform topping application and cutting." DOT 524.687-022, 1991 WL 674401. The DOT also indicates that this position requires proximity to moving mechanical parts up to one-third of the workday Id. "Proximity to moving mechanical parts" is defined to include "[e]xposure to possible bodily injury from moving parts of equipment, tools, or machinery." SCO App'x D, available at http://ssaconnect.com/tfiles/SCO-Appendices.pdf; see also SSR No. 00-4p, 2000 WL 1898791 at *2 ("In making disability determinations, we rely

6

primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.").

In assessing plaintiff's residual functional capacity, the Law Judge expressly stated that Mr. Ferguson must avoid concentrated exposure to hazards such as "moving machinery." (Tr. 18). Nonetheless, the Law Judge accepted the vocational expert's testimony that an individual with the same limitations as Mr. Ferguson is capable of performing the requirements of a bakery worker on a conveyor line. Because the DOT indicates that such position requires working with and around moving machinery, the court concludes that an apparent conflict exists between the DOT and the vocational expert's testimony, and that the Law Judge erred in failing to resolve this conflict. See Sartiaguda v. Comm'r of Soc. Sec., No. 2:17-cv-02280, 2019 WL 250531 at *8 (E.D. Cal. Jan. 17, 2019) (agreeing with the plaintiff that the Law Judge "erred by failing to inquire into the apparent conflict between the preclusion on exposure to moving mechanical parts and the [bakery] job's requirement of exposure to a conveyor line," and noting that "the ability to work in proximity to a conveyor line necessarily involves moving machinery and associated hazards because conveyor lines require moving machinery to function"); Barbera v. Comm'r of the Soc. Sec. Admin., No. 2:17-cv-03862, 2018 WL 6258676 at *6 (D. Ariz. Nov. 30, 2018) (concluding that the Law Judge erred in failing to reconcile an apparent conflict between the DOT's description of "conveyor bakery worker" and the plaintiff's "limitations regarding machinery").

Mr. Ferguson also argues that an apparent conflict exists between the DOT and the vocational expert's testimony that an individual with plaintiff's RFC can perform the job requirements of a surveillance system monitor. Specifically, Mr. Ferguson contends the General Educational Development (GED) reasoning level assigned to this particular position in the DOT is

inconsistent with plaintiff's limitation to "simple, routine tasks." (Tr. 18). After considering the relevant provisions of the DOT and applicable caselaw, the court agrees.

The DOT assigns each job a GED reasoning level "ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015). Mr. Ferguson correctly observes that the position of surveillance system monitor is described in the DOT as requiring a GED reasoning level of three. See DOT 379.367-010, 1991 WL 673244. The requirements of this level of reasoning include the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and the ability to "[d]eal with problems involving several concrete variables in or from standardized situations." Id.

At least two appellate courts have held that there is an apparent conflict between a limitation to simple, routine, or repetitive tasks and the requirements of level-three reasoning. See Zavalin, 778 F.3d at 846–47 (joining the Tenth Circuit in holding that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that a claimant's limitation to "simple and routine work tasks" is "inconsistent with the demands of level-three reasoning"). Likewise, other district courts in the Fourth Circuit have "repeatedly found that a limitation to simple or routine tasks conflicts with jobs requiring a GED reasoning level of three and that such a conflict must be addressed and resolved by the ALJ." Graham-Willis v. Colvin, No. 1:12-cv-02489, 2013 WL 6840465 at *7 (D.S.C. Dec. 27, 2013) (collecting cases). Along similar lines, the Fourth Circuit has held that a limitation to "short and simple instructions" apparently conflicts with jobs that require a GED reasoning level of three. Keller v. Berryhill, 754 F. App'x 193, 197 (4th Cir. 2018). In reaching this conclusion, the Fourth

Circuit found it appropriate to consider out-of-circuit precedent addressing a "simple tasks limitation," including the Ninth Circuit's decision in Zavalin. Id. at 197 & n.4.

In accordance with the foregoing decisions, the court agrees with Mr. Ferguson that an apparent conflict exists between the DOT and the vocational expert's testimony that an individual with plaintiff's RFC can perform the job of surveillance system monitor. As other courts have observed, "[a] limitation to performing simple tasks appears inconsistent with the requirements of Reasoning Level 3 that the individual be able to [d]eal with problems involving several concrete variables and to carry out instructions in diagrammatic form." Eddie v. Berryhill, No. 5:16-cv-00801, 2017 WL 4002147 at *8 (E.D.N.C. Aug. 24, 2017) (emphasis in original) (internal quotation marks omitted). The Law Judge did not address this inconsistency in her opinion or ask the vocational expert to explain why an individual who is limited to performing simple, routine tasks in a low stress environment can nevertheless meet the demands of level-three reasoning. The court concludes that the Law Judge erred in failing to reconcile this apparent conflict and that remand is required. See, e.g., Mullis v. Colvin, No. 1:11-cv-00022, 2014 WL 2257188 at *1 (M.D.N.C. May 29, 2014) (holding that the Law Judge's conclusions conflicted sufficiently to require remand and clarification where the Law Judge concluded that the plaintiff was limited to simple, routine, repetitive tasks in a low stress environment but could nonetheless perform the job of surveillance system monitor).

For the reasons stated, the court finds "good cause" to remand this case to the Commissioner for further development and consideration.[3] If the Commissioner is unable to decide the case in plaintiff's favor on the basis of the existing record, the Commissioner will

---

[3] In light of the court's decision to remand the case to the Commissioner, the court declines to address Mr. Ferguson's remaining claims of error.

conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate order of remand will be entered this day.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 21st day of May, 2019.

_____
Senior United States District Judge